UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

| | |
|---|---|
| AURITELA SANTOS, | COMPLAINT |
| Plaintiff, | Civil Action Number |
| -against- | 08 CV 01840 |
| THE CITY OF NEW YORK, DEPARTMENT FOR THE AGING and EDWIN MENDEZ-SANTIAGO, | JURY TRIAL REQUESTED |
| Defendants. | |

------------------------------------------------------------------------X

Plaintiff, AURITELA SANTOS, by and through her attorneys, TRAUB & TRAUB, P.C., as and for her Complaint, alleges the following:

## INTRODUCTION

1.  This is an action for equitable and legal relief, back pay, front pay, liquidated damages, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of sex (female) and national origin (Dominican) and to redress retaliation against plaintiff for complaining of discrimination. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1992, 42 U.S.C. Section 2000e *et seq.;* and the Administrative Code of the City of New York, Section 8-107.

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and 42 U.S.C. Section 2000e-5(f)(3). In addition, plaintiff invokes the

1

supplemental jurisdiction of this court over her claims arising under the New York City Administrative Code, pursuant to 28 U.S. C. Section 1367(a).

3.  Venue is properly laid in this district pursuant to 28 U.S.C. 1391(b) in that the unlawful employment practices alleged below were committed within the district.

## PARTIES

4.  Plaintiff is a female individual and of Dominican national origin and she resides in the State of New York, County of New York. At all times relevant herein, plaintiff was employed by defendants THE CITY OF NEW YORK and THE DEPARTMENT FOR THE AGING in the County of New York.

5.  Upon information and belief, defendant THE CITY OF NEW YORK was and is a municipal corporation, existing pursuant to the laws of the State and City of New York.

6.  Upon information and belief, defendant THE DEPARTMENT FOR THE AGING (hereinafter "DFTA") was and is an agency of defendant THE CITY OF NEW YORK, existing pursuant to the laws of the State and City of New York.

7.  Upon information and belief, defendant EDWIN MENDEZ-SANTIAGO is a male individual, who resides in the State of New York, County of Kings, and during all relevant times herein, was the Commissioner of DFTA.

## ADMINISTRATIVE HISTORY

8.  On or about September 5, 2006, plaintiff filed a verified Complaint of discrimination with the New York State Division of Human Rights and jointly filed her complaint with the United States Equal Opportunity Commission.

9.  On or about October 10, 2006, plaintiff amended her verified Complaint

with the New York State Division of Human Rights and the U.S. Equal Opportunity Commission.

10. On or about August 30, 2007, the New York State Division of Human Rights issued a Determination After Investigation, determining that there was probable cause to believe that defendants THE CITY OF NEW YORK, DEPARTMENT FOR THE AGING and EDWIN MENDEZ-SANTIAGO, engaged in or were engaging in the unlawful discriminatory practices of which plaintiff complained.

11. On or about September 4, 2007, plaintiff requested a Dismissal for Administrative Convenience from the New York State Division of Human Rights and a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission.

12. On or about November 27, 2007, the U.S. Equal Employment Opportunity Commission issued plaintiff a Notice of Right to Sue, which was received by plaintiff and her counsel on or about December 4, 2007. The instant complaint is filed within ninety days thereof.

13. On or about January 17, 2008, the New York State Division of Human Rights issued a Dismissal for Administrative Convenience, a copy of which was received by plaintiff and her counsel on or about January 22, 2008.

14. A copy of this Complaint is being served upon the Corporation Counsel and the Commission on Human Rights of the City of New York.

## FACTS

15. Plaintiff began her employment with defendant CITY OF NEW YORK in or about August 1999 and with DFTA in or about August, 2002.

16. Plaintiff was promoted to the position of office manager and executive secretary to the Commissioner of DFTA, defendant EDWIN MENDEZ-SANTIAGO, in or about January, 2004.

17. Throughout the relevant time period herein, defendant MENDEZ-SANTIAGO exercised supervisory responsibility over plaintiff.

18. Throughout her employment, plaintiff's time, attendance and performance were satisfactory.

19. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would continually make remarks to her of an implicitly and/or explicitly sexual nature.

20. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would continually make remarks to plaintiff and to others about the physical appearance of his female subordinate employees.  By way of example only, on or about July 7, 2006, defendant MENDEZ-SANTIAGO remarked in an email that he hated talking to one of his subordinate female employees – an older woman - because looking at her made him lose his appetite.

21. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would continually make remarks to her and to others about the physical appearance of female individuals with whom he would interact in his professional duties.

22. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would make remarks to plaintiff about his desire to leave his wife.

23. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would continually make remarks to plaintiff about his attraction to Dominican women including, but not limited to, remarks about how he loved Dominican women, how he had had an affair with a Dominican woman and how Dominican women drove him crazy.

24. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would make remarks to plaintiff about his "gypsy" blood and his "passionate" nature and he sent plaintiff a picture of himself as a young man.

25. In late 2004, early 2005, defendant MENDEZ-SANTIAGO made remarks to plaintiff that she was submissive because she was a Dominican woman.

26. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would send plaintiff emails that were unprofessional and sexually suggestive.

27. After plaintiff became defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would make remarks to plaintiff and/or about plaintiff in her presence, suggesting that she was having sexual affairs with male agency employees, including said defendant's drivers.

28. Upon information and belief, throughout plaintiff's employment while she was defendant MENDEZ-SANTIAGO's secretary, defendant MENDEZ-SANTIAGO would have physical and/or sexual relations with subordinate female employees in his office, while plaintiff had to sit at her desk directly outside his office.

29. In or about early 2006, and continuing thereafter, defendant MENDEZ-SANTIAGO made remarks to plaintiff indicating, among other things, that he wanted plaintiff to go out with him socially.

30. During the relevant time period, defendant MENDEZ-SANTIAGO put his hand down the pants of a subordinate female employee in plaintiff's presence.

31. In or about the Spring of 2006, and continuing thereafter, defendant MENDEZ-SANTIAGO told plaintiff that he wanted her to go with him and his male friend, Jose Ortiz Ortiz, to the Dominican Republic and told her she should bring with her a female friend. He also told plaintiff his friend would buy plaintiff a house in the Dominican Republic if she agreed to accompany the two of them on a trip to that location with a female friend.

32. In or about June, 2006, defendant MENDEZ-SANTIAGO made derogatory remarks to plaintiff about the wife of the super in his building, referring to her as "that Dominican woman" and indicating "that's the problem with all Dominican women", referencing the fact that she was of Dominican national origin.

33. In or about July, 2006, defendant MENDEZ-SANTIAGO indicated to plaintiff that he wanted her and her female friend to go to Atlantic City with him and his friend, Jose Ortiz Ortiz, and told plaintiff that he wanted to take their relationship to "the next level".

34. In or about mid-July, 2006, when plaintiff continued to rebuff defendant MENDEZ-SANTIAGO's overtures and plaintiff would not accompany defendant MENDEZ-SANTIAGO and his male friend on a trip to either the Dominican Republic or

Atlantic City, said defendant became hyper-critical of her work and made repeated remarks to plaintiff that she was "not the kind of wife" that he "needed".

35. On or about July 28, 2006, defendant MENDEZ-SANTIAGO made a remark to plaintiff in Spanish – "Te lo metio mongo" – stating that plaintiff had allowed someone to penetrate her with his penis without an erection. Said defendant made this remark in front of Sally Renfro, General Counsel for DFTA.

36. The behavior of defendant MENDEZ-SANTIAGO toward plaintiff was unwelcome and caused plaintiff great distress.

37. Plaintiff was unable to tolerate working for defendants due to the hostile and retaliatory work environment created by defendant MENDEZ-SANTIAGO and plaintiff had no choice but to take a medical leave of absence.

38. Plaintiff was constructively discharged from her employment.

39. In or about February 2007, defendants advised plaintiff that she would not be allowed to remain on leave and retain her position title.

40. In or about the summer of 2007, defendants demanded the return of property issued to plaintiff in connection with her employment, including her cell telephone and her Blackberry. Plaintiff returned such property upon defendants' demand.

41. Plaintiff was actually discharged from her employment by defendants as a further act of discrimination and in retaliation for her having complained of discrimination.

42. Upon information and belief, defendant MENDEZ-SANTIAGO subjected other subordinate female employees to discriminatory and retaliatory conduct and such

was known or should have been known to defendants THE CITY OF NEW YORK and DFTA.

43. Upon information and belief, the conduct of defendant MENDEZ-SANTIAGO was known by other employees, who exercised managerial and/or supervisory responsibility for defendants THE CITY OF NEW YORK and DFTA.

44. Upon information and belief, defendant THE CITY OF NEW YORK and DFTA knew or should have known of the conduct of defendant MENDEZ-SANTIAGO and failed to exercise reasonable diligence to prevent such conduct.

45. Defendants' treatment of plaintiff was intentional, willful and was carried out with malice and/or reckless indifference to plaintiff's rights.

46. Plaintiff suffered tremendous emotional distress and anxiety as a result of defendants' actions, as well as a loss of wages, benefits and other emoluments of employment and other significant harm.

## FIRST CAUSE OF ACTION

47. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 46 of this Complaint as if fully set forth herein.

48. Defendants have discriminated against plaintiff in the terms and conditions of her employment on the basis of her sex and/or her national origin in violation of Title VII.

49. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION

50. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 49 of this Complaint as if fully set forth herein.

51. Defendants have discriminated against plaintiff in her employment on the basis of her sex and/or her national origin in violation of Section 8-107(a) of the Administrative Code of the City of New York.

52. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' discriminatory practices unless and until this Court grants relief.

## THIRD CAUSE OF ACTION

53. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 52 of this Complaint as if fully set forth herein.

54. Defendants have retaliated against plaintiff on the basis of her having complained of discrimination in violation of Title VII.

55. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' retaliatory practices unless and until this Court grants relief.

## FOURTH CAUSE OF ACTION

56. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 55 of this Complaint as if fully set forth herein.

57. Defendants have retaliated against plaintiff on the basis of her having complained of discrimination in violation of Section 8-107 of the Administrative Code of the City of New York.

58. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' retaliatory practices unless and until this Court grants relief.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Declare, adjudge and decree that defendants discriminated against plaintiff on the basis of her sex and her national origin in violation of Title VII;

(b) Declare, adjudge and decree that defendants discriminated against plaintiff on the basis of her sex and her national origin in violation of Section 8-107 of the Administrative Code of the City of New York;

(c) Declare, adjudge and decree that defendants retaliated against plaintiff for having complained of discrimination in violation of Title VII;

(d) Declare, adjudge and decree that defendants retaliated against plaintiff for having complained of discrimination in violation of Section 8-107 of the Administrative Code of the City of New York;

(e) Enjoin defendants from engaging in further discriminatory or retaliatory actions against plaintiff;

(f) Directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect plaintiff's employment opportunities;

  (g) Order defendants to pay plaintiff damages in the amount equal to the value of all back pay, benefits and emoluments of employment with interest thereon;

  (h) Order defendants to pay plaintiff front pay;

  (i) Order defendants to pay plaintiff compensatory damages;

  (j) Order defendants to pay plaintiff punitive damages;

  (k) Award plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

  (l) Award such other and further relief as this Court may deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated: New York, New York
   February 22, 2008

               TRAUB & TRAUB, P.C.
               Attorneys for Plaintiff

               _____
               By: Doris G. Traub (DT 3114)
               39 Broadway, Suite 2420
               New York, NY 10006
               (212) 732-0208